**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELTON HAYMAN,** | : | **CIVIL ACTION** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **No. 08-574** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| **Respondents** | : | |

**REPORT AND RECOMMENDATION**

TIMOTHY R. RICE                                                      November 25, 2008
U.S. MAGISTRATE JUDGE

Petitioner Felton Hayman is on parole in Pennsylvania and has filed this counseled

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, I

respectfully recommend Hayman's petition be conditionally granted.  His conduct was not

criminal under the  Pennsylvania's Corrupt Organization Act, 18 Pa.C.S. § 911 [hereinafter Pa.

C.O.A.].  Therefore, his conviction pursuant to this statute cannot stand and the case should be

remanded to the state court to vacate Hayman's Pa. C.O.A. conviction and to re-sentence him.

See Kendrick v. District Attorney of the County of Philadelphia, 488 F.3d 217, 219 (3d Cir.

2007);  Kendrick v. Bailey, 2008 WL 509214, at *8 (E.D. Pa. Feb. 25, 2008) (Yohn, J.).

Hayman's plea, however, was knowing and voluntary because the Pa. C.O.A. charge was not an

essential part of the plea agreement and did not influence Hayman's decision to plead guilty.  See

Kendrick, 2008 WL 509214, at *8.  I recommend Hayman's remaining claims be denied as

untimely.

1

## FACTUAL AND PROCEDURAL HISTORY

On August 10, 1989, Donald Branch was shot and killed inside Tobin's Inn and two other individuals were wounded.  Hayman pled guilty to charges related to planning the murder of rival drug dealer Aaron Jones, during which Branch was killed and two others were injured.  Jones was not present and escaped death.  On October 28, 1991, Hayman pled guilty to third-degree murder,[1] criminal conspiracy, two counts of aggravated assault, and a violation of the Pa. C.O.A. See Transcript of Guilty Plea at 18, Commonwealth v. Hayman, No. 1065-78 (Ct. Com. Pl. Phila. Oct. 28, 1991) [hereinafter Plea Transcript].

Hayman completed and signed a written plea colloquy form, admitting he committed conspiracy, third-degree murder, aggravated assault, and engaged in conduct in violation of the Pa. C.O.A.  See Written Plea Colloquy, Commonwealth v. Hayman, No. 91-05-1078 (Ct. Com. Pl. Oct. 31, 1991).  This form set forth Hayman's right to a trial, the rights Hayman would have possessed at trial, and his pre-trial and appellate rights.  See id.  At the plea hearing, Hayman stated he completed the form with the assistance of his attorney.  See Plea Transcript at 3-4.  The judge explained to Hayman that he had a right to a trial, at which he would be presumed innocent.  Id. at 4.  The District Attorney listed each crime charged, the elements of each crime, the facts establishing each element in the case against Hayman, and the possible sentence for each charge.  Id. at 5-11.

---

[1] The information charged Hayman with murder and voluntary manslaughter. Murder Information, Commonwealth v. Hayman, No. 9105-1065 (Pa. Ct. Com. Pl. Phila. May 10, 1991) [hereinafter Murder Information].  Hayman pled guilty to third-degree murder and avoided prosecution on first- or second-degree murder charges.  Commonwealth v. Montalvo, 956 A.2d 926, 932 (Pa. 2008) (citing Commonwealth v. Wayne, 720 A.2d 456, 460 (Pa. 1998)) ("each member of a conspiracy to commit homicide can be convicted of first-degree murder regardless of who inflicted the fatal wound").

The District Attorney detailed the following evidence he would have presented at trial, id. at 11-17:

1. Edgar Hentz would have testified he received a call on August 10, 1989 stating Jones, a leader of a rival drug gang, was at Tobin's Inn. Id. at 11. Hentz called several people, including Hayman, who all met at 2109 Montrose Street in Philadelphia. Id. During the meeting, guns were distributed and the attendees discussed going to Tobin's Inn to murder Jones. See Plea Transcript at 12. Everyone then entered different cars; Hayman entered a car with Lee Jones and Sulieman Beyah. Id. Hentz arrived at Tobin's Inn, but Hayman did not. Id. Hentz would have testified that, at Tobin's Inn, the people who attended the 2109 Montrose Street meeting fired shots, and returned to 2109 Montrose Street. Id. at 13. Hayman was at the house when Hentz returned and Hentz discovered Hayman's car did not arrive at Tobin's Inn because of a problem with the car door. Id. Upon returning to 2109 Montrose Street, those at the house discussed how they had shot inside Tobin's Inn and shot Jones,[2] and one group had to get rid of their car during a police chase. Id. at 13-14.

2. Lee Jones would have testified he knew Hayman and worked for Hayman in the drug business. See Plea Transcript at 14. On August 10th, Hayman told Lee Jones he needed a car and Lee Jones brought his old car to Montrose Street. Id. He would testify he was in the car with Hayman and Beyah. Id. When they were approximately a block from Tobin's Inn they heard shots and turned around, assuming the shooting had already occurred. Id. Lee Jones would testify to the same post-shooting events at 2109 Montrose Street as Hentz. Id. Lee Jones

---

[2] Although the conspiracy members believed they shot and killed Jones, the murdered victim of their conspiracy was Branch, an innocent patron of Tobin's Inn. See Plea Transcript 11-17.

3

also would have testified his house was used as a stash house for the drugs and it was where the cocaine would be capped and broken down.  See Plea Transcript at 17.  Lee Jones would have testified he went with Hayman to pick up drugs from Hentz and saw Hayman give money to Hentz and receive drugs from Hentz.  Id.

      3.  Vernon Hawkins would have stated he attended the meeting at which the killing of Jones was discussed.  Id. at 15.

      4.  James Johnson and Barry Dutton, two victims of the Tobin Inn shooting, would have testified they were patronizing Tobin's Inn when shooting erupted in the bar.  Id.  Both were hit in their legs and seriously injured.  Id.

      5.  The medical examiner would have testified that Branch's cause of death was four bullet wounds to the body.  See Plea Transcript at 15.

      6.  Additional witnesses would have stated Branch came to Tobin's Inn on the evening of August 10th to have dinner with his girlfriend and he was shot while eating dinner.  Id. at 15-16.

      7.  Witnesses, including Preston Henley, would have stated they worked in the drug business for Hayman.  Henley had purchased cocaine for Hayman from New York.  Id. at 16. Henley went to prison, and when released, started buying from Hayman.  Id.  The District Attorney would have presented testimony Hentz supplied drugs to Hayman.  Id.  Henley would have testified he was getting cocaine from Hayman in 1989, and Hayman was getting the cocaine from Hentz.  See id.

      The Court asked Hayman if he would like to make any additions or corrections to the District Attorney's factual recitation.  Id.  Hayman responded that: (1) Lee Jones did not work for Hayman, rather they worked together; (2) he did not want to kill anyone at Tobin's Inn; and (3)

he did not make it to Tobin's Inn.  Id. at 18.  Hayman then pled guilt to conspiracy, third-degree murder, aggravated assault, and violating the Pa. C.O.A.  Id.  The District Attorney dismissed all other charges.  See Plea Transcript at 3.

At the time of his plea, the judge sentenced Hayman to five-to-ten years for one of the aggravated assault charges.  See Plea Transcript at 19.  Sentencing on all other charges was deferred.  Id.  At the February 13, 1993 sentencing hearing, Hayman's attorney moved to withdraw Hayman's guilty plea.  See Transcript of Sentencing Hearing at 19-20, Commonwealth v. Hayman, No. 0992-1073 (Ct. Com. Pl. Phila. Feb. 19, 1993).  The judge denied the motion. Id. at 22.  The judge sentenced Hayman to five-to-ten years for the second aggravated assault charge to run consecutive to the sentence Hayman had already agreed to begin serving after his plea; ten-to-twenty years for the murder charge to run consecutive to the other imprisonment terms; five-to-ten years for the conspiracy charge to run concurrent with the other terms; and two-and-one-half-to-five years for the Pa. C.O.A. charge to run concurrent with the other terms. Id. at 75.

Hayman filed a written motion to withdraw his guilty plea, see Petition to Withdraw Guilty Plea, Commonwealth v. Hayman, No. 1065-1094 (Ct. Com. Pl. Phila.) [hereinafter Petition to Withdraw Guilty Plea], and a motion to reconsider his sentence, see Petition for Reconsideration of Sentence, Commonwealth v. Hayman, No. 1065-1094 (Ct. Com. Pl. Phila.). The court denied both motions.  See Opinion, Commonwealth v. Hayman, No. 1065-1073, slip op. at 2 (Ct. Com. Pl. Phila. filed July 2, 1993).  Hayman appealed, claiming the trial court erred when it did not grant his motion to withdraw his guilty plea.  See Opinion, Commonwealth v.

Hayman, No. 01913 PHL 93, slip op. at 1 (Pa. Super. Ct. filed Jun. 29, 1994) [Direct Appeal Superior Court Opinion].  The Superior Court affirmed, with one judge dissenting.[3]  Id. at 4.

On December 4, 1995, Hayman filed a petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq.  See Motion for Post-Conviction Collateral Relief, Commonwealth v. Hayman, No. 1065-1073 (Ct. Com. Pl. Phila. filed Dec. 4, 1995) [hereinafter 1995 PCRA Petition].  The PCRA court granted the Commonwealth's motion to dismiss Hayman's petition, finding Hayman waived the ineffectiveness claims because he failed to raise them at the first available opportunity.[4]  See Opinion, Commonwealth v. Hayman, No. 1065-1073, slip op. at 5 (Ct. Com. Pl. Phila. filed Nov. 19, 1996) [hereinafter 1996 PCRA Court Opinion].  The Superior Court affirmed.  Commonwealth v. Hayman, 02539 PHL 1996, slip op. at 1 (Pa. Super. Ct. filed Jul. 3, 1997) [hereinafter 1997 Superior Court Decision].

---

[3]  Contrary to Hayman's suggestion, see Petitioner's Response at 4, the majority of the Superior Court panel did not find his counsel ineffective, see Memorandum Opinion, Commonwealth v. Hayman, No. 01813 PHL 93, slip op. at 1,4 (Pa. Super. Ct. filed Jun. 29, 1994).  Rather, the majority found the issue whether the trial court erred when it denied Hayman's motion to withdraw his guilty plea had been waived because it was not properly raised on appeal.  Id.  The court did not address whether counsel was ineffective for failing to properly raise the issue on appeal.

[4]  Contrary to Hayman's contention, see Petitioner's Memorandum at 5, the court did not note counsel's ineffectiveness.  The court found Hayman had failed to raise his ineffective assistance of counsel claims on direct appeal.  1996 PCRA Court Opinion at 11.  Therefore, the court found Hayman had waived his claim that counsel was ineffective for failing to move to withdraw the guilty plea and failing to advise Hayman to withdraw his guilty plea after Hayman denied involvement in the conspiracy.  Id.  In addition, the court found even if the claims were not waived, Hayman had failed to prove ineffectiveness because any action by counsel would not have affected the court's acceptance of the guilty plea.  Id. at 10-11.  Therefore, Hayman did not prove prejudice.  See Strickland v. Washington, 466 U.S. 687 (1984) (to establish counsel ineffectiveness petitioner must prove counsel's performance was deficient and petitioner was prejudiced by counsel's performance).

On December 8, 1998, Hayman filed a second PCRA petition. See Petition Under the

Post-Conviction Relief Act, Commonwealth v. Hayman, No. 1065-1073 (Ct. Com. Pl. Phila.

filed Dec. 8, 1998) [hereinafter 1998 PCRA Petition]. The court dismissed his petition on

August 22, 1999. See Opinion, Commonwealth v. Hayman, No. 9105-0992, slip op. at 1 (Ct.

Com. Pl. Phila. Nov. 23, 1999) [hereinafter 1999 PCRA Court Opinion]. The Superior Court

affirmed. See Opinion, Commonwealth v. Hayman, No. 2909 EDA 1999, slip op. at 1 (Pa.

Super. Ct. Sept. 13, 2000) [hereinafter 2000 Superior Court Opinion].

Hayman filed a third PCRA petition on February 20, 2001, see Petition under the Post-

Conviction Relief Act, Commonwealth v. Hayman, No. 91-05-0992 7/8 (Ct. Com. Pl. Phila. filed

Feb. 20, 2001) [hereinafter 2001 PCRA Petition], which was denied, see Letter to Petitioner,

Commonwealth v. Hayman, No. 9105-0992 7/8 (Ct. Com. Pl. Phila. Mar. 27, 2002).

On February 5, 2008,[5] Hayman filed a federal habeas corpus petition alleging: (1) his

conviction was obtained by a plea of guilty which was unlawfully induced or not made

voluntarily with understanding of the nature of the charges and the consequences of the plea; (2)

ineffective assistance of counsel for failing to file a written motion to withdraw the guilty plea;[6]

and (3) he is serving an illegal sentence because he was convicted under the Pa. C.O.A. See

---

[5] Hayman's original petition, filed on February 5, 2008, was not on the appropriate form. Pursuant to a March 10, 2008 order, this petition was dismissed without prejudice to the filing of a petition on the appropriate form. See Order, Hayman v. Commonwealth, No. 08-574 (E.D. Pa. filed March 10, 2008). The March 10, 2008 order stated if an amended petition was filed, the original petition would constitute a brief in support of the petition. Id. Hayman filed an amended petition on the appropriate form on April 8, 2008. Although not originally filed on the appropriate form, Hayman's petition will be considered filed on February 5, 2008. In addition, pursuant to the March 10, 2008 order, the February 5, 2008 petition will be considered a memorandum in support of the April 8, 2008 amended petition.

[6] Hayman's counsel on federal habeas was also his counsel during the plea hearing.

7

Petition for Writ of Habeas Corpus by a Person in State Custody at 9(a) - 9(f), <u>Hayman v.</u>

<u>Commonwealth of Pennsylvania</u>, 08-574 (E.D. Pa. filed Apr. 4, 2008) [hereinafter Petition].

<b><u>DISCUSSION</u></b>

I.    <u>Pennsylvania Corrupt Organization Act</u>

A.    <u>Hayman's conviction and confinement pursuant to the Pennsylvania Corrupt
      Organization Act is unconstitutional</u>

Hayman's conviction and continued incarceration under the Pa. C.O.A. violates the Due

Process Clause.  <u>See</u> <u>Fiore v. White</u>, 531 U.S. 225, 228 (2001); <u>Commonwealth v. Besch</u>, 674

A.2d 655, 661 (Pa. 1996).  Therefore, I recommend Hayman's claim concerning the Pa. C.O.A.

charge be granted.

A due process violation occurs when a defendant is convicted and incarcerated under a

statute that does not prohibit the defendant's conduct.  <u>Fiore</u>, 531 U.S. at 228.  In <u>Besch</u>, decided

in 1996, after Hayman's conviction became final in 1995,[7] the Pennsylvania Supreme Court

interpreted the Pa. C.O.A. for the first time and held that the express intent of the Pa. C.O.A. was

to "prevent infiltration of legitimate businesses by organized crime."  <u>Besch</u>, 674 A.2d at 660.[8]

---

[7]  Hayman's conviction became "final" on February 16, 1995, ninety days after November 18, 1994, when his right to seek certiorari in the Supreme Court of the United States expired.  <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000) (judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the 90-day time limit for filing a writ of certiorari in the Supreme Court).

[8]  Within two weeks of the <u>Besch</u> decision, the Pennsylvania legislature amended the Pa. C.O.A and stated it never intended to exempt illegal or illegitimate businesses from the reach of the Pa. C.O.A.  <u>See</u> <u>Commonwealth v. Shaffer</u>, 734 A.2d 840 (Pa. 1999).  In <u>Shaffer</u>, however, the Pennsylvania Supreme Court held the legislature lacked the authority to overrule the court's decision in <u>Besch</u>.  <u>Shaffer</u>, 734 A.2d at 843.  The court reasoned the legislature's amendment applied only prospectively.  <u>Id.</u> at 844.  The <u>Besch</u> court's interpretation of the Pa. C.O.A, however, became a part of the legislation from the date of its enactment.  <u>Id.</u>

8

The Pa. C.O.A. therefore, did not apply to involvement in wholly illegitimate operations.  Id.

The Court further explained in Commonwealth v. Shaffer, 734 A.2d 840, 843 (Pa. 1999), and

Kendrick v. District Attorney, 916 A.2d 529, 538 (Pa. 2007), that Besch's holding did not

establish a new rule, but merely set forth the meaning and scope of the Pa. C.O.A. from the time

of its original enactment in 1973 until its amendment in 1996.

In 1989, when Hayman committed the charged crimes, the Pa. C.O.A. did not prohibit

Hayman's conduct.  Hayman's wholly illegitimate operation was not within the scope of the Pa.

C.O.A., as interpreted by the state's highest court.  Thus, as the Commonwealth concedes,

Hayman's conviction and continued parole under the Pa. C.O.A. is a violation of due process and

Hayman's petition should be granted[9] to allow the Commonwealth to vacate Hayman's

conviction related to the Pa. C.O.A. and re-sentence him accordingly.  See also, Kendrick, 488

F.3d at 219-20; McKeever v. Warden SCI-Graterford, 486 F.3d 81, 86 (3d Cir. 1986) (granting

writ of habeas corpus but leaving remedy to the state court); see also Fiore, 531 U.S. at 228.

    B.    Hayman's guilty plea was knowingly and voluntarily entered

    1.    The improper interpretation of the Pa. C.O.A. charge does not render Hayman's
plea unknowing and involuntary

Hayman maintains his guilty plea was not knowingly or voluntarily entered.  See Petition

at 9.  He argues every charge was based on the Pa. C.O.A. charge and he pled guilty only because

he faced the Pa. C.O.A. charge.  See Petition Under 28 U.S.C. § 2254 for a Writ of Habeas

Corpus at 22, Hayman v. Commonwealth of Pennsylvania, No. 08-574 (E.D. Pa. filed Feb. 5,

---

    [9]  A federal court may grant habeas relief to a state prisoner "on the ground that he is in
custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §
2254(a).

2008) [hereinafter Petitioner's Memorandum].  I must determine whether the Pa. C.O.A. charge

influenced Hayman's guilty plea such that it was not knowingly and voluntarily entered.[10]

See Kendrick, 488 F.3d at 219.  For the following reasons, Hayman's claim is meritless.

The plea colloquy must establish the defendant entered a plea knowingly and voluntarily.

Boykin v. Alabama, 395 U.S. 238, 242 (1969).  When a guilty plea is entered in a state criminal

trial, "several federal constitutional rights" are waived, including the privilege against

compulsory self-incrimination, the right to jury trial, and the right to confront one's accusers.  Id.

at 243.  The trial court, therefore, must "make sure [the defendant] has a full understanding of

what the plea connotes and of its consequence" and create "a record adequate for any review that

may later be sought."  Id. at 244.  The trial court must ensure "the defendant understands the

nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for

which he is charged and the permissible range of sentences."  Id. at 244 n.7 (quoting

Commonwealth ex rel. West v. Rundle, 237 A.2d 196, 197-98 (Pa. 1968)).  "A transcript

showing full compliance with the customary inquiries and admonitions furnishes strong,

although not necessarily conclusive, evidence that the accused entered his plea without coercion

---

[10]  Hayman challenged his guilty plea at least four times in state court, but never raised this claim.  See Sentencing Hearing at 21; Petition to Withdraw Guilty Plea (stating defendant pled guilty only because the court agreed to consider the cooperation tendered by defendant); 1995 PCRA Motion at 2 (alleging the plea was not voluntarily and knowingly entered because he was not informed of the charges' nature, he denied the crimes' circumstances, and his counsel was ineffective for failing to advise him of his right to withdraw the guilty plea); 2001 PCRA Motion (claiming guilty plea to crime of corrupt organizations was unlawfully induced). Because Hayman's time period for challenging his plea on federal habeas has expired, see infra Part II, I will review only whether the invalid Pa. C.O.A. charge influenced Hayman's decision to plead guilty, thus rendering it an unknowing and involuntary plea.  See Kendrick, 488 F.3d at 219.  All other grounds alleged for challenging his guilty plea were known to him at the time of his plea and should have been raised at that time.  See infra Part II.

and with an appreciation of its consequences." Kendrick, 2008 WL 509214, at *4 (quoting

United States v. Stewart, 977 F.2d 81, 84 (3d Cir. 1992)).

For a defendant who pleads guilty to a violation of the Pa. C.O.A., rescission of the entire

plea agreement is required only where the Pa. C.O.A. charge was an "essential part" of the agreed

exchange. See Kendrick, 2008 WL 509214, at *4 (citing McKeever, 486 F.3d at 89 n.10). In

McKeever, 486 F.3d at 86, the court declined to adopt a rule that would "render a multi-count

indictment per se invalid when a subsequent change in the law renders a defendant innocent of

some, but not all, of the counts." The court found the Pa. C.O.A. charges were not essential to

the plea agreement and, therefore, "rescission of the plea agreement was not necessary." Id. at

89.

In Kendrick, 488 F.3d at 219-20, the court remanded the case for a determination whether

the plea was knowing and voluntary, noting the possibility that the parties' knowledge of the

law's interpretation may have influenced the decision to plead guilty. On remand, the district

court held a hearing and determined Kendrick's guilty plea was knowing and voluntary and "the

parties' lack of knowledge of the correct interpretation of the Pa. C.O.A did not sufficiently

influence Kendrick's decision to plead guilty and was not sufficiently central to the bargain to

render the entire plea agreement invalid." Kendrick, 2008 WL 509214, at *4.[11] The court

reasoned the state trial court conducted an extensive colloquy, detailing the facts and charges;

Kendrick had agreed to the facts and charges at his guilty plea hearing; the paper record

---

[11] On remand, only Kendrick testified and claimed he pled because the Pa. C.O.A. was
charged. Kendrick, 2008 WL 509214, at *3. The prosecutor had no recollection of the hearing
and neither party called Kendrick's defense attorney to testify. Id. The trial court discredited
Kendrick's testimony. Id. at *6-7.

suggested Kendrick did not request a new trial until ten years after his guilty plea, rather he argued only for a re-sentencing in his court papers; and Kendrick was not a credible witness. Id. at *8.

As in Kendrick, Hayman's lack of knowledge regarding the correct interpretation of the Pa. C.O.A. did not sufficiently influence his decision to plead guilty and was not sufficiently central to the agreement to render the agreement invalid. See Kendrick, 2008 WL 509214, at *8. The court conducted an extensive colloquy consistent with Boykin; the proffered evidence would have been sufficient to convict Hayman of conspiracy, third-degree murder, and aggravated assault; Hayman admitted he was guilty of the charges; the state court record established Hayman pled guilty in hopes of receiving a lower sentence; the sentence for the Pa. C.O.A. charge was insignificant compared to the aggregate sentence; and Hayman would have faced additional charges at trial, which could have resulted in an even greater sentence.

First, the court conducted an extensive colloquy, explaining Hayman's rights, the charges to which he was pleading, and the evidence the District Attorney would have presented to prove those charges. See Plea Transcript. Hayman then pled guilty to conspiracy, third-degree murder, aggravated assault, and a violation of Pa. C.O.A. See id. at 18. To prove conspiracy, the Commonwealth must establish "(1) the defendant intended to commit or aid the commission of the criminal act; (2) the defendant entered into an agreement with another . . . to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." Commonwealth v. Montalvo, 956 A.2d 926, 932 (Pa. 2008) (quoting Commonwealth v. Rega, 933 A.2d 997, 1009 (Pa. 2007)); see also Commonwealth v. Brundidge, 590 A.2d 302, 305 n.3 (Pa. 1991) (defining conspiracy). Third-

degree murder is established where a defendant kills another person with malice.
Commonwealth v. Geiger, 944 A.2d 85, 90 (Pa. Super. Ct. 2008) (citing Commonwealth v. Hardy, 918 A.2d 766, 774 (Pa. Super. Ct. 2007)); see also Commonwealth v. Pitts, 404 A.2d 1305, 1307 (Pa. 1979); Commonwealth v. Thomas, 594 A.2d 300, 514 (Pa. 1991) (malice exists "where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty"). A defendant commits aggravated assault when he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Commonwealth v. Miller, 955 A.2d 419, 422 (Pa. Super. Ct. 2008) (citing 18 Pa. C.S.A. § 2702(a)(1)).

Each member of a conspiracy is criminally responsible for the acts of his co-conspirators. Commonwealth v. Johnson, 920 A.2d 873, 879 (Pa. Super. Ct. 2007) (citing Commonwealth v. McCall, 911 A.2d 992, 996 (Pa. Super. Ct. 2006)); see also Commonwealth v. Robinson, 505 A.2d 997, 1001 (Pa. Super. Ct. 1986) (citing Commonwealth v. Bachert, 412 A.2d 580, 583 (1980)). Accordingly, each co-conspirator can be convicted of third-degree murder for any killing which is "a natural and probable consequence of a co-conspirator's conduct," Commonwealth v. Bigelow, 611 A.2d 301, 304 (Pa. 1992), and each co-conspirator can be convicted of an aggravated assault committed by a co-conspirator, Commonwealth v. Baucage, 2008 WL 3824419 (Pa. Com. Pl. Ct. Apr. 24, 2008). Moreover, "each member of a conspiracy to commit homicide can be convicted of first-degree murder regardless of who inflicted the fatal wound." Montalvo, 956 A.2d at 932 (citing Commonwealth v. Wayne, 720 A.2d 456, 460 (Pa. 1998)); see also Commonwealth v. Joseph, 304 A.2d 163, 168 (Pa. 1973).

At Hayman's guilty plea hearing, the District Attorney explained the elements of conspiracy, third-degree murder, and aggravated assault, and proffered sufficient evidence that would have established Hayman's guilt on each charge.  See Plea Transcript at 5-17.  He explained the conspiracy involved an agreement to murder Jones and the overt act done in furtherance of the agreement occurred when Hayman's co-conspirators, Curt Perry and Maximilian El, fired guns, which killed Branch and injured others.[12]  See Plea Transcript at 7; see also, 18 Pa. Cons. Stat. Ann. § 903 (defining conspiracy).  The District Attorney explained the elements of third-degree murder were met because Hayman's co-conspirators acted with malice when they unlawfully murdered Branch.  See Plea Transcript at 8; see also 18  Pa. Cons. Stat. Ann. § 2501-2502 (defining criminal homicide and third-degree murder).  The District Attorney explained the two counts of aggravated assault were based on Hayman's co-conspirators' shooting of others, which caused serious bodily injury, with the intent to cause such serious bodily injury to another person.  See Plea Transcript at 8-9; see also 18  Pa. Cons. Stat. Ann. § 2702 (defining aggravated assault).

The District Attorney did not rely, as Hayman claims, on the Pa. C.O.A. charge to prove or bolster any other charge.  See Petitioner's Memorandum at 22; Plea Transcript at 7-11.  The

---

[12]  Hayman argues the Commonwealth did not present evidence Hayman committed an act in furtherance of the conspiracy other than leaving Montrose Street.  See Petitioner's Response at 2.  Hayman, however, did not need to personally commit an overt act in furtherance of the conspiracy to be convicted.  See Commonwealth v. Schoff, 911 A.2d 147, 160 (Pa. Super. Ct. 2006) (citing Commonwealth v. Jones, 874 A.2d 108, 121-22 (Pa. Super. Ct. 2005)).  Rather, "[a]n overt act committed by any co-conspirator in furtherance of the conspiracy will satisfy the overt act requirement."  Id. (citing Commonwealth v. Finn, 496 A.2d 1254, 1256 (1985)).  Therefore, as the District Attorney explained, the act in furtherance of the conspiracy to murder Jones was committed by Hayman's co-conspirators when they fired guns into Tobin's Inn.  See Plea Transcript at 7; 18 Pa. Cons. Stat. Ann. § 903.

District Attorney explained the Pa. C.O.A. charge involved a claim Hayman was engaged in an enterprise, i.e., he was a part of a drug organization, which bought cocaine for money and resold it to make money, and Hayman engaged in drug business activities through a pattern of racketeering, i.e., committed at least two predicate acts.  <u>See</u> Plea Transcript at 9-11.  The predicate acts included picking up cocaine to deliver to someone else, breaking drugs down, delivering drugs to someone, conspiring to murder Jones, and murdering Branch.  <u>See</u> Plea Transcript at 9-11.  Thus, the Pa. C.O.A. charge encompassed more than the plot to murder Jones.

Second, the murder, conspiracy, and aggravated assault charges were independent of the Pa. C.O.A. charge.  <u>See</u> Plea Transcript; Sentencing Transcript; <u>see also</u> <u>McKeever</u>, 486 F.3d at 88.  Contrary to Hayman's contention, <u>see</u> Petitioner's Memorandum at 22, the proffered evidence was not admitted solely to prove the Pa. C.O.A. charge.  Similarly, the alleged racketeering activity was not the sole basis linking Hayman to the murder of Branch and the other charges.  The evidence discussed by the District Attorney included testimony about the meeting prior to the shooting at Tobin's Inn, Hayman's actions following the meeting where he entered a car and attempted to go to Tobin's Inn, the shooting at Tobin's Inn, and the subsequent meeting which discussed the shooting.  <u>See</u> Plea Transcript at 11-17.  This evidence was admissible to prove, and would have supported, convictions for conspiracy, assault, and third-degree murder, regardless of the Pa. C.O.A. charge and its predicate acts.  <u>See</u> <u>id.</u>; 18 Pa. Const. Stat. Ann. §§ 903, 2501-02, 2702.  It is unlikely Hayman would have admitted a role in the murder simply because he faced drug charges as part of the Pa. C.O.A. violation.

Third, Hayman listened to the elements of the charges and the evidence, and agreed he was guilty of the alleged crimes.  See Plea Transcript at 18.  Hayman corrected only that he worked with one of the witnesses, rather than that witness worked for him, he did not intend to kill anyone at Tobin's, and did not arrive at Tobin's.  Id.

Fourth, although Hayman challenged the voluntariness of the plea agreement in state court, he has never alleged he pled guilty to the other charges only because he faced charges under the Pa. C.O.A.  See Sentencing Hearing at 21; Petition to Withdraw Guilty Plea (pled guilty only because the court agreed to consider the cooperation tendered by defendant); 1995 PCRA Motion at 2 (plea was not voluntarily and knowingly entered because he was not informed of the charges' nature and denied the crimes' circumstances); 2001 PCRA Motion at ¶ 18 (guilty plea to Pa. C.O.A. violation unlawfully induced).  In 1998, Hayman's lawyer and Hayman's mother submitted affidavits stating Hayman pled guilty because he believed he would receive a minimum of eight-to-ten years imprisonment, without mentioning the Pa. C.O.A. charge or its sentence.  See Affidavit of Maxine Hayman at ¶ 6, 10, 1998 PCRA Petition at Ex. A; Affidavit of Robert Mozenter, Esquire, 1998 PCRA Petition at Ex. B.  Until 2008, Hayman's challenges to his guilty plea focused on his sentence, his innocence, or the his innocence of the Pa. C.O.A. charge.  See Sentencing Hearing at 21; Petition to Withdraw Guilty Plea; 1995 PCRA Motion at 2; 2001 PCRA Motion at ¶18.  It was not until 2008 that he claimed the entire plea agreement was involuntary due to the Pa. C.O.A. charge.  See Petition at 9.

Fifth, Hayman's sentence establishes the Pa. C.O.A. charge was not a significant factor in the case against Hayman and did not influence Hayman's decision to plead guilty.  McKeever, 486 F.3d at 87-88 (noting the counts were independent of each other and reasoned the court

16

sentenced the defendant separately on all counts and the Pa. C.O.A. sentence was concurrent).

Hayman was sentenced to 20 to 40 years imprisonment.  See Sentencing Transcript at 75.  Of this

aggregate sentence, the court sentenced him to only a concurrent two-and-one-half-to-five years

imprisonment for the Pa. C.O.A. charge.  Id.  Hayman knew he would receive at least an eight-to-

ten year minimum sentence, see Affidavit of Robert Mozenter, Esquire at ¶ 11-12, 1998 PCRA

Petition at Ex. B, and knew the conspiracy, third-degree murder, and aggravated assault charges

could have resulted in 35 to 70 years imprisonment, see Plea Transcript.  The additional

possibility of ten-to-twenty years for the Pa. C.O.A. charge could not have significantly impacted

Hayman's decision.  See McKeever, 486 F.3d at 87-88.

Sixth, Hayman faced an enhanced sentence if he did not plead guilty.  He was charged

with murder and voluntary manslaughter, but pled guilty to third-degree murder.  See Murder

Information; Plea Transcript at 2, 18.  Hayman, therefore, avoided trial for first-degree or second-

degree murder, and avoided the risk of a greater sentence.  See Montalvo, 956 A.2d at 932.  In

addition, when Hayman pled, the District Attorney dismissed other charges, which could have

enhanced Hayman's possible sentence.[13]  See Plea Transcript at 3; Docket, Commonwealth v.

---

[13]  Contrary to Hayman's suggestion, the Commonwealth's failure to present evidence
relating to the conspiracy to murder Junior Black Mafia members on July 11, 1989, see
Petitioner's Response at 2, does not alter the analysis.  To the contrary, his plea enabled him to
avoid this more serious charge.  The Pa. C.O.A charge listed both the murder of Branch on
August 10, 1989 and the conspiracy to murder Junior Black Mafia members on July 11, 1989, as
predicate acts for the Pa. C.O.A. charge and stated the predicate acts were not limited to those
listed.  See PA. C.O.A. Information, Commonwealth v. Hayman, 9105-1078 (Ct. Com. Pl. Phila.
May 9, 1991).  It appears, however, Hayman also was charged with the conspiracy to murder
Junior Black Mafia members in a separate bill of information.  See Conspiracy Bill of
Information, Commonwealth v. Hayman, No. 9105-1077 (Ct. Com. Pl. Phila.).  The District
Attorney dismissed this charge, along with other open charges, when Hayman pled guilty.  See
Plea Transcript at 3 (stating Commonwealth will dismiss remaining bills).  Therefore, if Hayman
(continued...)

Hayman, CP-51-CR-0509927-1991 (Ct. Com. Pl. Phila.) (listing crimes dismissed, including possessing instruments of crime, carrying firearms without license, and criminal conspiracy).

Accordingly, the Pa. C.O.A. was not an essential part of the plea agreement and could not have influenced Hayman's decision to plead guilty.  See Kendrick, 2008 WL 509214, at *8.

2.    An evidentiary hearing is not required

There is no need for an evidentiary hearing.  First, Hayman did not request an evidentiary hearing and the state court record contains the transcript of the guilty plea hearing and the PCRA petitions filed by Hayman.  Second, in Kendrick, the Third Circuit required only that the district court decide whether the plea was knowing and voluntary.  488 F.3d at 220.  It did not require an evidentiary hearing. See id.

Although the district court in Kendrick held an evidentiary hearing, it is unnecessary here. Even if Hayman testified he would not have pled if the Pa. C.O.A. charge had not been alleged, the Pa. C.O.A. charge could not have affected the decision to plead guilty.  The sentence he faced for the Pa. C.O.A. charge was ten-to-twenty years, see Plea Transcript at 11, which was less than the aggregate possible sentence for the other charges, which totaled 35 to 70 years imprisonment. See Plea Transcript at 6-11.  In addition, Hayman faced additional charges, which the District Attorney agreed not to prosecute in exchange for Hayman's guilty plea.  See Plea Transcript at 3. These additional charges could have increased Hayman's possible sentence beyond the 70 year maximum.

---

[13] (...continued)
had not pled, the conspiracy to murder Junior Black Mafia members charge could have increased his possible sentence.  The District Attorney was not required to present evidence relating to the conspiracy to murder Junior Black Mafia members because Hayman was not pleading guilty to that charge and the conspiracy was not required to prove the predicate acts.  18 Pa. C.S.A. § 911 (b), (h)(4) .

Moreover, the underlying nature of the charges and the uncontroverted evidence of Hayman's involvement in the murder of Branch, coupled with Hayman's willingness to immediately begin serving a sentence of five-to-ten years imprisonment, undermine any suggestion Hayman pled guilty only because he faced a Pa. C.O.A. charge.

II.     Hayman's Time-Barred Claims

Hayman claims ineffective assistance of counsel for failing to file a written motion to withdraw Hayman's guilty plea and that the guilty plea "was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea." See Petition at 9. These claims are time-barred.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year federal limitations period for filing applications for writs of habeas corpus. 28 U.S.C.A. § 2244(d)(1). It provides that:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral appeal; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

19

Id.  Section 2244 further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  This one-year statute of limitation applies on a claim-by-claim basis.  See Fiedler v. Varner, 379 F.3d 113, 122 (3d Cir. 2004).

The federal limitations period may be tolled during the time a state collateral proceeding is pending if the collateral petition was properly filed under state law.  28 U.S.C. § 2244(d)(2).  A properly filed state petition is one "submitted according to the state's procedural requirements, such as the rule governing the time and place for filing."  Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998); see also Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (where the state court rejected petitioner's PCRA petition as untimely, the petition was not "properly filed," and the petitioner was not entitled to statutory tolling under § 2244(d)(2)).

Hayman's judgment of sentence became final on February 16, 1995, 90 days after the Pennsylvania Supreme Court denied his petition for allowance of appeal and Hayman's time period to file a petition for writ of certiorari expired.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the 90-day time limit for filing a writ of certiorari in the Supreme Court).  Because Hayman's conviction became final prior to AEDPA's enactment, the one-year statute of limitations on his claim did not start to run until April 24, 1996, the date AEDPA became effective.  See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998) (where conviction became final prior to April 24, 1996, petitioners had until April 23, 1997 to file a federal habeas petition).  Therefore, Hayman had one year from April 24, 1996, that is, until April 23, 1997, to file his federal petition.  See id.  Hayman did not file his federal petition until

February 5, 2008.  Therefore, his federal petition is untimely unless he can establish the federal limitations period was tolled through February 5, 2008, or he satisfies an exception to the federal limitations period.  See 28 U.S.C. § 2244(d).

Hayman properly filed a PCRA petition on December 4, 1995, in which he alleged his guilty plea was not knowing and voluntary.  See 1995 PCRA Petition.  As a result, Hayman's federal limitations period was tolled from December 4, 1995 until August 2, 1997, thirty days after the Pennsylvania Superior Court denied Hayman's collateral appeal, and his time for appealing to the Pennsylvania Supreme Court expired, see Pa. R. App. P. 1113 (petition for allowance of appeal shall be filed within thirty days of a Superior Court's decision); Swartz v. Meyers, 204 F.3d at 424 (the word "pending" includes the time during which a prisoner could file an appeal, even if no such appeal is sought).  Hayman filed a second PCRA petition on December 7, 1998.  See 1998 PCRA Petition.  The court rejected the petition as untimely, see 1999 PCRA Court Opinion, and the Pennsylvania Superior Court affirmed that decision on September 13, 2000, see 2000 Superior Court Opinion.  Hayman filed a third PCRA petition in February 2001, see 2001 PCRA Petition, which the court denied as untimely, see Letter to Petitioner.  Hayman's second and third PCRA petitions did not toll his federal limitations period because they were not properly filed.  See Pace, 544 U.S. at 417.

Because Hayman's federal limitations period had not started prior to the filing of his first PCRA petition, Hayman had one year from August 2, 1997 to file his federal habeas and his federal limitations period expired August 1, 1998.  Hayman did not file his federal petition until February 5, 2008 -- over nine years after his federal limitations period expired.  Thus, Hayman's PCRA petition's tolling of the federal limitations period until August 2, 1997 did not make his February 5, 2008 federal petition timely.

Nor can Hayman satisfy any of the statutory exceptions to the federal limitations period set forth in § 2244(d)(1)(B)-(D).  His ineffectiveness and invalid guilty plea claims do not rely on a new rule of retroactively applicable constitutional law and do not allege any state action prevented him from filing his petition.  See § 2244(d)(1)(B)-(C).  Moreover, the factual predicates upon which the claims are based concern events that took place prior to and during trial and appeal, and were discoverable in the exercise of due diligence.  See § 2244(d)(1)(D).

Similarly, Hayman does not present any extraordinary circumstance beyond his control that would meet the judicially established criteria for disregarding the federal limitations period pursuant to the doctrine of equitable tolling.  Equitable tolling is appropriate

> only in the rare situation where [i]t is demanded by sound legal principles as well as the interests of justice . . . [and] only when the principles of equity would make the rigid application of a limitation period unfair.  Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights.  The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims.

Schlueter v. Varner, 384 F.3d 69, 75-76 (3d Cir. 2004), cert. denied, 544 U.S. 1037 (2005); Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Adams v. Palackovich, 2007 WL 1650677, *2-3 (E.D. Pa. June 4, 2007) (Giles, J.).  The statute of limitations "can be tolled when principles of equity would make [its] rigid application unfair."  Urcinoli v. Cathel, 2008 WL 4822247, at *2 (3d Cir. filed Nov. 7, 2008) (quoting Shendock v. Dir. Office of Workers' Comp. Programs, 893 F.2d 1458, 1462 (3d Cir. 1990)).  "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  See Pace, 544 U.S. at 418.[14]  Hayman  must prove

---

[14]   The Supreme Court has not addressed whether equitable tolling applies to the AEDPA limitations period.  Pace, 125 S.Ct. at 1814 n.8 (assuming equitable tolling applied); see
(continued...)

all facts demonstrating entitlement to relief from custody.  <u>Brown v. Cuyler</u>, 699 F.2d 155, 158

(3d Cir. 1982).  The statute of limitations has been tolled if "(1) the defendant has actively misled

the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his

rights; or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."

<u>Urcinoli</u>, 2008 WL 4822247, at *2 (quoting <u>Satterfield v. Johnson</u>, 434 F.3d 185, 195 (3d Cir.

2006)).

 No extraordinary circumstances prevented Hayman from filing a timely petition.[15]

Moreover, Hayman does not identify, and I cannot find, any new evidence to prove actual

innocence as an extraordinary circumstance to disregard the limitations period.  An allegation of

"actual innocence" is not a free-standing exception to the federal limitations period.  <u>Araujo v.

Chandler</u>, 435 F.3d 678, 682 (7th Cir. 2005), <u>cert. denied</u>, 127 S.Ct. 39 (2006); <u>see</u> <u>McKeever v.

Warden SCI Graterford</u>, 486 F.3d 81, 84 n.5 (3d Cir. 2007) (Third Circuit has not yet recognized

such a claim); <u>Gatewood v. Thomas</u>, 2008 WL 162154, at *4 (E.D. Pa. Jan. 14, 2008) (O'Neill,

J.); <u>Calderon</u>, 2007 WL 1740273, at *6.  Asserting actual innocence does not provide a basis for

relief, it merely serves as "a gateway through which a habeas petitioner must pass to have his

otherwise barred constitutional claim considered on the merits."  <u>Herrera v. Collins</u>, 506 U.S.

390, 404 (1993).

---

[14]  (...continued)
<u>Calderon v. Hogan</u>, 2007 WL 1740273, at *4 n.5 (E.D. Pa., June 14, 2007) (Restrepo, J.).

 [15]  Hayman argues the delay should be excused because without the Pa. C.O.A. charges,
"the other charges fall like a house of cards."  <u>See</u> Petitioner's Response to the Commonwealth's
Response to Petition for Writ of Habeas Corpus at 6, <u>Hayman v. Commonwealth of
Pennsylvania</u>, No. 08-574 (E.D. Pa. filed Sept. 25, 2008).  As explained herein, the Pa. C.O.A.
did not influence Hayman's decision to plead guilty, and therefore, is not an extraordinary
circumstance to excuse the untimely filing.

Assuming a viable claim of actual innocence could equitably toll the limitations period, Hayman must offer "new reliable evidence" showing it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  Schlup v. Delo, 513 U.S. 298, 324, 327 (1995); Thompson v. Folino, 2007 WL 1725197, at *5 (E.D. Pa. Apr. 17, 2007) (Reuter, J.).  Hayman cannot satisfy this "demanding" standard.  See House v. Bell, 126 S.Ct. 2064, 2077 (2006).  Hayman claims he was innocent and relies on a dissent from a state court opinion which stated Hayman should be permitted to withdraw his plea agreement due to a pre-sentence assertion of innocence.[16]  See Petitioner's Response at 4.  Hayman, however, does not present new evidence that would have altered his decision to plead guilty.  See Thompson, 2007 WL 1725197, at *5-6 (evidence is not new as it was available to petitioner as early as his trial).  Moreover, Hayman does not explain why he waited over ten years before raising the counsel ineffectiveness and involuntary guilty plea claims on federal habeas.  Sessa v. Klem, 2007 WL 2769596, at *10 (E.D. Pa. Sept. 20, 2007) (Golden, J.) (petitioner did not present actual innocence sufficient to equitably toll the statute of limitation because his petition did not undermine the evidence presented at the guilty plea hearing, he offered no new evidence, and failed to explain the untimely filing of his federal petition).

---

[16]  The dissent relied on Hayman's statements at his sentencing hearing that he felt "a lot of remorse for Mr. Branch. [He] had no intention of going there. [He] had no involvement with killing nobody."  See Dissenting Statement of McEwen, J. at 4, Commonwealth v. Hayman, No. 01813 Philadelphia 1993 (Pa. Super. Ct. filed Jun. 29, 1994) (quoting Sentencing Transcript at 71).  Hayman also stated he "had no intention of being at no murder, to commit no murder . . . . [He] never had a problem with Aaron Jones . . . . [He] didn't have nothing to do with killing Mr. Branch."  Id.  These statements were made at the end of sentencing when the court asked Hayman if he had anything he would like to say.  Id.  Even if a dissenting state court judge stated he believed the guilty plea should be withdrawn due to a pre-sentence assertion of innocence and even if the plea should have been withdrawn, Hayman fails to explain why he did not marshal such evidence to challenge his conviction in the thirteen years following his conviction. Therefore, he does not satisfy the exception to the one-year limitations period.

Hayman also fails to prove ineffective assistance of counsel as an extraordinary circumstance to excuse his untimeliness. Although ineffective assistance of counsel may equitably toll a limitations period, Hayman must establish counsel was indeed ineffective, see United States v. Casiano, 216 Fed. Appx. 173, 175 (3d Cir. 2007) (deadline may be equitably tolled by a showing of ineffective assistance of counsel, but record that counsel was not ineffective can negate the contention), and the ineffectiveness was an extraordinary circumstance. Gatewood, 2008 WL 162154, at *5. Hayman, however, fails to bear this heavy burden.

Ineffective assistance of counsel has not generally been considered an extraordinary circumstance where the ineffectiveness was due to counsel's negligence or mistake. United States v. Martin, 408 F.3d 1089, 1093-94 (8th Cir. 2005). Serious attorney misconduct, however, may warrant equitable tolling. Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001) (noting claims of attorney misconduct may provide a basis for equitable tolling), overruled on other grounds by Carey v. Saffold, 536 U.S. 214 (2002); see, e.g., Spitsyn v. Moore, 345 F.3d 796, 798 (9th Cir. 2003) (tolling state habeas petitioner's statute of limitations due to the "extraordinary circumstance" of egregious misconduct on the part of petitioner's attorney); Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) ("It is not inconsistent to say that attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.").

Hayman alleges his counsel was ineffective for failing to file a written motion to withdraw his guilty plea, but does not allege, and the record does not show, how this alleged error prevented him from filing a timely federal petition. Therefore, counsel ineffectiveness does not constitute an extraordinary circumstance. See Gatewood, 2008 WL 162154, at *5.

25

Accordingly, Hayman failed to file his federal habeas petition before the federal limitations period expired and failed to satisfy the requirements of the exceptions to the federal limitations period.  Therefore, I recommend Hayman's ineffectiveness and involuntary guilty plea claims be dismissed as untimely.[17]

Accordingly, I make the following recommendation.

---

[17] Because I find the ineffectiveness claim and the involuntary plea claim untimely, I will not address the merits of the claim, which Hayman argues in his petition and brief.  See 28 U.S.C.A. § 2244(d)(1) (imposing one-year statute of limitations).

## RECOMMENDATION

AND NOW, this 25th day of November, 2008, it is respectfully recommended the petition for a writ of habeas corpus be: (1) GRANTED in part as to Hayman's conviction under the Pa. C.O.A. with execution stayed for 180 days to permit the Commonwealth of Pennsylvania to vacate the conviction and re-sentence Hayman accordingly; (2) DENIED in part with prejudice as to his untimely claims.  It is further recommended that there is no probable cause to issue a certificate of appealability.[18]  The petitioner may file objections to this Report and Recommendation within ten days after being served with a copy thereof.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:


/s/ TIMOTHY R. RICE
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

---

[18]   Jurists of reason would not debate my recommended procedural or substantive dispositions of the petitioner's claims.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Therefore, no certificate of appealability should be granted.  See id.